## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID F. KELLY BEY, | : | No. 3:13-CV-1942 |
| Plaintiff | : | (Judge: A. Richard Caputo) |
| | : | |
| v. | : | (M.J.: Susan E. Schwab) |
| | : | |
| DANIEL S. KEEN, MICHELLE WELLER, | : | |
| JESSICA STERNER-LENSBOWER, | : | JURY TRIAL DEMANDED |
| AND ISAAC BURKHOLDER, | : | |
| Defendants | : | (Electronically Filed) |

## STATEMENT OF MATERIAL FACTS

1.    Defendant, Daniel S. Keen, is the Warden of the Franklin County Jail [hereinafter also "FCJ"].  His duties are to supervise and direct the work and the staff required of the department, to oversee the complete operations of the facility, and to develop and implement policies for the overall efficiency and orderliness of operations.  (See Exhibit 1, Affidavit of Daniel Keen [hereinafter "A. D. Keen"] ¶¶ 1-2.)

2.    Defendant, Michelle Weller, is Deputy Warden for Inmate Services at the FCJ.  Weller reports directly to Keen.  Weller's duties as Deputy Warden for Inmate Services include overseeing services provided to the inmate population. These services include treatment, religious and medical services.  (See Exhibit 2, Affidavit of Michelle Weller [hereinafter "A. M. Weller"] ¶¶ 1-2.)

3.      Defendant, Jessica Sterner-Lensbower, is Director of Treatment for the FCJ.  As Director of Treatment, Sterner-Lensbower's duties include overseeing case management services provided to inmates and responding to the first state of the inmate grievance process. (See Ex. 1, A. D. Keen ¶ 5.)

4.      Defendant, Isaac Burkholder, is the sole Chaplain employed by the Franklin County Jail, his services being provided through Prison Ministries, Inc., at a cost of $15,000.00 per year.   As Prison Chaplain, Burkholder oversees and delivers individual and group religious programming and counseling.  His specific duties include assuring equal status and protection for all recognized religions; developing a schedule of religious activities that provides for inmates of all religious denominations and disseminating the program; monitoring scheduled activities for content and suitability, providing counseling, providing advice on religious matters, maintaining connections with religious resources in the community, and being available to inmates regarding religious matters.  (See Exhibit 3, Affidavit of Isaac Burkholder [hereinafter "A. I. Burkholder"] ¶¶ 1-4; Exhibit 4, FCJ Policy and Procedure 400.13, Religious Programming and Activities, at 4, 8.1-8.3, 11.)

5.      Plaintiff, David F. Kelly-Kelly-Bey, claims to be a Sunni Muslim/Moorish-American individual[1].  He was formally incarcerated in the FCJ.  Kelly-Bey entered the FCJ on April 27, 2011, and remained there until April 8, 2013, though he was released for a period of time on March 20, 2013, but was re-incarcerated.  Following his release, he was re-incarcerated on May 23, 2013, until Kelly-Bey was transferred from the facility on July 11, 2013, to SCI-Camp Hill, after sentencing by the Franklin County Court of Common Pleas.  (See Ex. 2, A. M. Weller, at ¶ 43.)

6.      According to Islamic law, food is either halal, "lawful," or haram, "forbidden."  Foods are halal unless they are explicitly forbidden.  Haram foods include: pork, pork-by-products, and pork-derivatives; all types of blood; meat of animals which have died naturally, were killed by strangulation, a violent blow, or a headlong fall, partially eaten by scavengers, or sacrificed as an offering to idols; carnivorous animals, reptiles and insects; and wine, ethyl alcohol and spirits.  (See e.g. Exhibit 5, United States Department of Justice, Federal Bureau of Prisons, Technical Reference on Inmate Religious Beliefs and Practices [hereinafter "DOJ Technical Reference"], at Religious Diets 2.)

7.      Pursuant to the teachings of the Moorish Science Temple of America, Moorish-Americans are not to consume pork or anything else that may be harmful

---

[1] Defendants are not entirely clear as to Kelly-Bey's religious beliefs, but believe for the purposes of this Motion, the Court may take judicial notice of the Plaintiff's surname, "Kelly-Bey", as indicative of his adherence to Moorish American religious dictates, as well as his grievances from 2006.  (See SMF ¶ 10, infra.)

to them, and do not consume alcohol or use tobacco.  (See e.g. id., at MST of A 1, 4.)

8.      Defendant Weller, as Deputy Warden of Inmate Services, has spent considerable time familiarizing herself with the practices of a variety of religious affiliations, in order to properly provide for the religious needs of inmates in the FCJ.  She has also specifically familiarized herself with Islamic and Moorish American religious practice.  Weller routinely contacts representatives of various religions with questions regarding their practice and procedure, when faced with inmate questions or requests on religious matters of which she lacks prior or detailed knowledge.  (See Ex. 2, A. M. Weller ¶¶ 3-8.)

9.      Weller also asks the requesting inmate to provide her a statement of their reasons for requesting a particular item, diet, or alteration in current jail practice, both to allow her to validate any request and to correctly and specifically address the inmates' needs. (See, Ex. 2, A. M. Weller ¶¶ 4, 16-17)

10.     While incarcerated in the FCJ in 2006, Plaintiff submitted two (2) Inmate Request Slips, asking that Moorish American Islamic services be held at the chapel and requesting the facility obtain Moorish American religious materials. (See Exhibit 6, Inmate Request Slip dated 6-12-06; Exhibit 7, Inmate Request Slip dated 6-20-06.)

11.   On August 5, 2011, Kelly-Bey filed an Inmate Grievance Form, regarding the failure of the FCJ to provide Muslim inmates an Imam to conduct services.  In response, Sterner-Lensbower, Weller, and Keen, all responded that the FCJ would welcome an Imam, and had been attempting to procure one, but could not locate any individual willing to volunteer.  (<u>See</u> Exhibit 8, Inmate Grievance Form dated 8-5-11.)

12.   On August 29, 2012, Plaintiff submitted an Inmate Request Slip, asking whether the FCJ "serves hala meals to muslims inmates," and stating that if it does not, kosher meals should be provided as the "only meal that similar to a hala diet . . .  since it a pork-free diet meal."   Weller responded by stating the general meals were compliant, as they contain no pork, no blood, no carnivorous animals and no alcohol.  (<u>See</u> Exhibit 9, Inmate Request Slip dated 8-29-12.)

13.   On August 31, 2012, Kelly-Bey against submitted a Request Slip, stating Weller had "misconstrued" his question, and asking "whether the Franklin County Jail provides Muslim inmate with special religious hala diets," and again requesting kosher meals.   Weller restated the position that the meals were compliant with Islamic dietary requirements, and wrote "[i]f you believe this is not in compliance, please explain why." (<u>See</u> Exhibit 10, Inmate Request Slip dated 8-31-12.)

14.    On September 29, 2012, Kelly-Bey submitted an Inmate Grievance Form threatening civil action and stating the jail was violating his civil rights by failing to provide a halal menu.  Sterner-Lensbower responded that the grievance was unclear as to how religious needs were not being met.  Weller responded that the meal plan was reviewed and did not conflict with the essential tenants of Islam. (See Exhibit 11, Inmate Grievance Form dated 9-29-12.)

15.    On October 2, 2012, Kelly-Bey submitted another Inmate Request Slip, but rather than providing details regarding why he felt the meals were not compliant, he simply requested a "hala diet that conforms to my religious faith and practice."  Weller, stating she had researched the matter, replied that the jail meals did not violate Islam, and added that Kelly-Bey could request the vegetarian diet option.  (See Exhibit 12, Inmate Request Slip dated 10-2-12.)

16.    Plaintiff submitted another Inmate Request Slip with regard to the meal plan on July 4, 2013, to which Weller responded by stating again the meals were compliant.  (See Exhibit 13, Inmate Request Slip dated 7-4-13.)

17.    As to religious diets, Franklin County Jail policy provides:

> Inmates observing special religious dietary laws will be provided a diet, which meets the recommended daily allowance, as stated by the National Academy of Science, and which complies with the religious and dietary laws.  The provision of such a diet must be consistent with the secure and orderly operation of the facility.

(See Ex. 4, Franklin County Jail Standard Operating Procedure 400.13, Religious Programming and Activities [hereinafter "FCJ SOP 400.13"], Procedure 7].

18.     FCJ policy additionally provides:

> 5.3.1  Religious diets will be provided for inmates whose religious beliefs require the adherence to religious dietary laws.
>
> 5.3.2  Religious diets may be recommended by the Chaplain to the Deputy Warden of Inmate Services.  The Deputy Warden of Inmate Services or designee will approve all religious diets.
>
> 5.3.3  The recommendation will include the reason for the request, the duration of the proposed change, and the proposed menu changes.
>
> 5.3.4  The burden of proof that the meal is an essential tenet of a sincerely held religious belief will be the responsibility of the requesting inmate.

(See Exhibit 14, Franklin County Jail Standard Operating Procedure 300.10 [hereinafter "FCJ SOP 300.10"], Food Service, Procedure 5.3).

19.     The Franklin County Jail utilizes Trinity Services Group, Inc., to provide food services for inmates. (See, Ex. 2, A. M. Weller ¶ 9.)

20.     The FCJ provides general population inmates with a dietary plan which operates on a four (4) week cycle [hereinafter "General Population Meal Plan" or "General Plan"], comprised of both meat and vegetarian items.  The General Population Meal Plan has been approved by a Licensed Dietician-Nutritionist, who has affirmed that the meals provide a nutritionally adequate diet

7

averaging 3000 calories per day, satisfying the Recommended Dietary Allowances for major nutrients required for adult males.  Each meal costs $1.18 per tray.  (See Exhibit 15, Franklin County Jail Meal Plan Certifications; Exhibit 16, General Population Meal Plan, Weekly Menu Cycles; Exhibit 17, Franklin County Jail Meal Plans Diet Load Sheets; Ex. 2 A.M. Weller ¶ 10; Ex. 1, A.D. Keen ¶¶ 6, 12)

21.     The General Population Meal Plan does not contain pork, pork by-products, or pork derivatives, and contains no blood, carnivorous animals, reptiles, or insects, and no alcohol.  These requirements comport with the guidelines for provision of a Muslim religious diet, as set forth by the United States Department of Justice.  (See e.g. id.; Ex. 4, FCJ SOP 400.13, at 7.1; Ex. 5, DOJ Technical Reference.)

22.     Trinity Services Group, Inc.  has assured Defendants the General Plan comports with a Muslim religious diet. (See Ex. 2, A. M. Weller ¶ 11; Ex. 1, A. D. Keen ¶ 8.)

23.     Kitchen staff here assured Defendants the General Plan comports with a Muslim religious diet. (See Ex. 1, A. D. Keen ¶ 8.)

24.      Because the General Population Meal Plan does not contain pork items, no special meals are required for inmates whose religious dietary rules prohibit consumption of pork.  (See Ex. 4, FCJ SOP 400.13, at 7.1; Ex. 1, A. D. Keen ¶ 7; Ex. 2, A. M. Weller ¶ 12.)

25.     Other special religious diets may be requested in writing to the Deputy Warden of Inmate Services, or via the Chaplain, who forwards such requests thereto.  The requests are validated by the Deputy Warden with members of the particular religious community, and if validated and approved, will be forwarded to the Food Service Manager.  (See Exhibit 4, FCJ Policy and Procedure 400.13, Religious Programming and Activities, at 7.2.; Ex. 2, A. M. Weller ¶¶ 15-18.)

26.     Prior to any request for a religious diet being verified and approved, an inmate may ask to be placed on a Vegan Meal Plan or Vegetarian Meal Plan. Indeed, any inmate may, for any reason, request the Vegan or Vegetarian Meal Plan, and such requests are always approved.  This is the sole accommodation offered to inmates pending approval.  (See Ex. 4, FCJ Policy and Procedure 400.13, Religious Programming and Activities, at 7.2.; Ex. 2 A. M. Weller ¶¶ 13-14, 19-20; Ex. 17, Diet Load Sheets.)

27.     Weller, who has taken considerable care to familiarize herself with religious practices of various sects represented in the FCJ, often asks inmates to provide a detailed statement of their reasoning for making a request.  (See Ex. 2, A.M. Weller ¶ 17.)

28.     Upon receiving a dietary request, Weller contacts members of the particular religious community of the requesting inmate, to validate whether the

request comports with the tenants of the inmate's particular faith group.  Weller also relies on her personal knowledge and various other reference materials. (See, Ex. 2, A. M. Weller ¶¶ 16-18, 3-6.)

29.    Containing no meat whatsoever, the ingredients used in the Vegetarian Meal Plan include only foods which are without doubt halal: milk, honey, non-intoxicating plants, vegetables and fruits, legumes, and grains.  The vegetarian diet accords with all recommended daily allowance, as by the National Academy of Science, and has been certified by a Licensed Dietician-Nutritionist as being fit for adult males.   (See Ex. 15, Franklin County Jail Meal Plan Certifications; Ex. 17, Diet Load Sheets; Ex. 2, A.M. Weller ¶ 14; Ex. 3, A. I. Burkholder ¶¶ 21-24.)

30.    The Franklin County Jail General Population Meal Plan was chosen after deliberation and consideration of the most cost effective manner to satisfy the dietary needs of the broadest segment of the inmate population possible using a single meal plan.  Such improves efficiency in the food service of the jail, and reduces the cost of food service.  (See Ex. 1, A. D. Keen ¶ 9.)

31.    The determination not to include any pork, pork by-products, or pork derivatives was a conscious choice, given the prescription in several of the world's religions against the consumption of pork.  It was hoped that by removing all pork derivatives from the menu, and thus from the kitchen facilities at the jail, the needs

of the vast majority of the inmate population could be met via a single meal plan, with meals prepared inside the FCJ.  (See id. at ¶ 10.)

32.    Use of the general meal plan simplifies food preparation and increases efficiency, as there are no novel or unique ingredients that are served to some persons and not to others.  The General Plan also allows the Jail to service the dietary needs of inmates with only three (3) full-time and one (1) part-time kitchen staff. (See id. at ¶ 11.)

33.    Each meal prepared for the General Population Meal Plan costs approximately $1.18/tray.  (See id. at ¶ 12.)

34.    The single and encompassing meal plan also reduces the need for security checks for deliveries of kitchen supplies, as the ingredients of the meals are the same and are all delivered at once, seventeen (17) times per month, from the same provider.  Because all ingredients are delivered simultaneously from the same provider, the General Population Meal Plan also reduces the number of staff necessary to conduct security checks of food deliveries, and the frequency of such checks.  As such, the General Population Meal Plan increases the security of the institution.  (See id. at ¶ 13.)

35.    Thus, the General Population Meal Plan serves to reduce food service costs, simplify meal preparation, and improve efficiency and security.  (See id. at ¶ 14.)

36.     Jewish inmates who observe kashrut law are placed on the Kosher Meal Plan, which consists of pre-packaged entrees prepared outside the FCJ, which are delivered to the institution in double layered and sealed packaging.  The meals come with disposable utensils, and accord with the extremely complex preparatory requirements of Jewish law.  The content of the Kosher meals is dictated by the provider.  Each Kosher meal costs $5.00 .  (See Ex. 2, A. M. Weller ¶¶ 21-24 ; Ex. 1, A. D. Keen ¶15.)

37.     The determination to purchase pre-packaged kosher meals was the most cost effective means to provide for the dietary needs of Jewish inmates, given the prohibitive cost of creating and maintaining a kosher kitchen inside the FCJ. Additional costs including training on kosher law and cooking, procedures to prevent contamination of the kosher utensils and cooking implements, and the necessity of rabbinical inspections, were also considered. (See Ex. 1, A. D. Keen ¶ 16.)

38.     If the FCJ were required to provide a specific "Halāl Meal Plan," much of the benefits of the General Population Meal Plan would be removed, as multiple plans would be prepared in the FCJ kitchen.  This would complicate food service, require the hiring of more kitchen staff, and adversely affect efficiency. (See Ex. 1, A. D. Keen ¶ 17.)

39.    Because the needs of Muslim inmates are satisfied by the General Population Meal Plan, if a "Halāl Meal Plan" were required, the FCJ would also need to provide a "Buddhist Meal Plan," "Sikh Meal Plan," and other meal plans for various faiths which are all now provided by the General Population Meal Plan and/or Vegetarian/Vegan Meal Plans. (See Ex. 1, A. D. Keen ¶ 18.)

40.    A separate 'Halāl Meal Plan' would be an enormous expense, and would place a substantial strain on prison resources, impacting the ability of the FCJ to provide other services to inmates.  The jail would be required to reduce the number of correctional officers employed, as well as reduce the rehabilitative and educational services provided to inmates, thereby affecting the institutional order, and the safety and security of remaining staff and the inmate population. (See Ex. 1, A. D. Keen ¶ 19.)

41.    The budget of the FCJ would be severely strained if the institution were required to separately provide halāl meat for prisoners.  Additionally, greater numbers of correctional officers would be needed to check the deliveries and maintain security, but the funds needed to purchase the meat would actually require a reduction in the number of staff employed by the jail. (See Ex. 1, A. D. Keen ¶ 20.)

42.    Following the filing of Plaintiff's requests and grievances relating to halal meals, Weller contacted Trinity Services Group, Inc., and inquired whether

the meal plan was compliant with Islamic dietary restrictions. The Trinity representative assured Weller that the General Population Meal Plan and Vegetarian/Vegan meal plans were in accord with Islamic law and practice. (See Ex. 2, A. M. Weller ¶ 27.)

43.    Following submission of the Inmate Request Slips and Grievance by the Plaintiff, Weller requested Kelly-Bey clarify why he believed the General Population Meal Plan was not compliant with the dictates of his religion. Bey did not respond to Weller's requests for clarification. (See id. ¶¶ 25-26.)

44.    Plaintiff never requested the Vegetarian or Vegan Meal Plan. (See id. ¶ 28.)

45.    Defendants here relied in good faith on their personal knowledge, assurances of the providers, consultation, and a personal review of the menu that the General Plan and Vegetarian/Vegan plans comport with the requirements of a Muslim religious diet and Kelly-Bey's religious needs. (See e.g., A.D. Keen ¶¶6-8; A.M. Weller ¶¶ 27, 29.)

46.    The FCJ employs one (1) full-time Chaplain to service the religious needs of the inmates held at the facility, provided through a contractual agreement with the United Churches of the Chambersburg Area, at a cost of $15,000.00 per year. (See Ex. 1, A. D. Keen, ¶51-22; Ex. 2, A. M. Weller ¶ 30.)

47.    Pursuant to FCJ Policy, the qualifications for the Chaplain are set by the Warden, and the Chaplain is to assure equal status and protection for all recognized religions represented in the inmate population.  (See Ex. 4, FCJ SOP 400.13, at 4; Ex. 1, A. D. Keen ¶ 23; Ex. 3, A. I. Burkholder ¶¶ 2-4.))

48.    The Chaplain is also responsible for maintaining a schedule of religious activities and worship services catering to all recognized religions represented in the inmate population and to disseminate that schedule.  (See Ex. 3, A. I. Burkholder ¶4.)

49.    While the Chaplain does provide religious counseling and services to all inmates if so requested regardless of religious affiliation, Volunteer Clergy from various denominations and affiliations visit the FCJ to provide services specifically to the adherents of their particular faith.  (See Ex. 3, A. I. Burkholder ¶¶ 4-5; Ex. 18, Franklin County Jail Standard Operating Procedure, Volunteers; Ex. 2, A. M. Weller ¶ 30.)

50.    The Deputy Warden for Inmate Services and the Chaplain both take requests from inmates regarding the need for clergy from a particular faith, and make inquiries of geographically near organizations representing such religion regarding an individual to come to the jail to provide services.  (See Ex. 2, A. M. Weller ¶ 29; Ex. 3, A. I. Burkholder ¶10.)

51.    At present, there is no volunteer Imam to provide religious services, including leading Taleem studies or officiating Jumu'ah Friday prayer, to Muslim inmates. (See, Ex. 3, A. I. Burkholder ¶ 9.)

52.    There is no full-time Rabbi to service Jewish inmates, Apostle to service Mormon inmates, Preacher to service Protestant inmates, Monk, Lama, or Scholar to service Buddhist inmates of various sects, Brahmin to service Hindu inmates, or Guru to service Sikh inmates.  There is no full-time Shia Muslim cleric. There is also no full-time cleric to service Eastern Rite Catholic inmates, Asatru inmates, Native American inmates of various tribes, Rastafarian inmates, Roman Catholic inmates, Eastern Orthodox inmates, or Wiccan inmates.  (See Ex. 2, A. M. Weller ¶ 31 ; Ex. 3, A. I. Burkholder ¶ 6.)

53.    Of the 416 inmates currently housed in the FCJ, twelve (12) identify as Muslim and one (1) specifically identifies as Sunni.  There is also one (1) Buddhist inmate, one (1) Satanist inmate, one (1) German Baptist inmate, and one (1) Wicca inmate.  The majority of inmates identify themselves as "Christian," without specification.  There are also Catholic inmates, Protestant inmates, Greek Orthodox inmates, Eastern Orthodox inmates, Jewish inmates, Mennonite inmates, Pentecostal inmates, Baptist inmates, Lutheran inmates, Mormon inmates, and Methodist inmates.  Other religious denominations have been represented in the inmate population in the past.  (See Ex. 2, A. M. Weller ¶ 32.)

54.     Taleem is the urdu word for "education," and denotes a program of education including recitation and review of the Qur'an, the holy book of Islam, as well as of the Hadith and Sunnah, which are libraries cataloging the sayings and doings of the Prophet Muhammad.   During Taleem, the teachings of Islam are discussed and meditated upon.   "Jumu'ah" is a congregational prayer held by Muslims every Friday, just after noon, involving a sermon, recitation of traditional prayers, and a congregational prayer, which is traditionally led by an Imam but may be led by an adult male member of the Islamic community.   The Jumu'ah is obligatory for Muslim men above the age of puberty, and requires they pray in congregation either in a mosque or with a group of Muslims.   (See Ex. 5, DOJ Technical Reference; Ex. 3, A. I. Burkholder ¶ 7-8.)

55.     In 2004, the FCJ had an arrangement with an Imam referred to the institution by the Islamic Society of Western Maryland.   The Imam was an unpaid volunteer, and travelled from Maryland to the FCJ to conduct Ju'muah services once per month, and lead prayer sessions during Ramadan.   (See Ex. 2, A. M. Weller ¶ 33.)

56.     The visits ceased at the end of the Ramadan holiday in 2006, after the Imam travelled to the FCJ and found no inmates wished to participate in services. That Imam does not wish to return to the Franklin County Jail.   (See Ex. 2, A. M. Weller ¶ 34.)

57.    Since 2006, FCJ officials have made inquiries with a variety of Islamic societies and Mosques regarding a volunteer Imam, but have been unable to locate one.   Many of the organizations and clerics contacted desired compensation for their time and travel expenses and opined the location of the FCJ made finding a willing volunteer difficult.  Officials continue their efforts to locate a volunteer.  (See Ex. 2, A. M. Weller ¶¶ 35-37, 42 ; Ex. 3, A. I. Burkholder ¶ 10-11.)

58.    The FCJ simply does not have the financial resources to compensate the clerics of any religious organization or sect to provide religious services to inmates.   Because of the limited budget, if the FCJ were to compensate the clerics of various faiths, sects, and sub-sects thereof for providing religious services, it would be unable to provide other vital services to inmates, and would be required to reduce correctional officers and other vital staff, threatening the good order of the institution. (See, Ex. 1, A. D. Keen ¶¶ 25-26; Ex. 2, A. M. Weller ¶¶ 38-39.)

59.    At present, Muslim Inmates are accorded a space for their weekly use in the FCJ Chapel to conduct inmate led Taleem Studies, Jumu'ah Services, and other Islamic religious functions, and materials necessary to do so, and are supervised during worship by the Chaplain, Isaac Burkholder. (See, Ex. 2, A. M. Weller ¶ 40; Ex. 3, A. I. Burkholder ¶ 16-17.)

60.     The Chaplain has a good knowledge of Islamic practice and a deep respect for all forms of religious faith. (<u>See</u>, Ex. 2, A. M. Weller ¶ 41; Ex. 3, A. I. Burkholder ¶ 13-15.)

61.     The Chaplain is present to supervise for security reasons. (<u>See</u>, Ex. 2, A. M. Weller ¶ 42.)

62.     Inmates are also allowed to engage in daily individual prayer.  (<u>See</u> Ex. 3, A. I. Burkholder ¶ 19.)

63.     The jail has a policy, which is strictly followed, of not requiring inmates to participate in religious services, and not favoring one type of service over another.  The services of both the Chaplain and the Volunteer Clerics are to provide inmates the option, but do not oblige them, to follow their particular faith during their incarceration.  (<u>See</u> Ex. 1, A. D. Keen ¶ 27.)

Respectfully Submitted,
Lavery Faherty Patterson

Date:  Nov. 4, 2013                    By:    <u>/s/ Jessica S. Hosenpud.</u>
                                       Jessica S. Hosenpud, Esq.
                                       ID# 307656
                                       225 Market Street, Suite 304
                                       P.O. Box 1245
                                       Harrisburg, PA 17109
                                       Phone:  717-233-6633
                                       Fax:  717-233-7003
                                       jhosenpud@laverylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Amyra Wagner, an employee of the law firm of Lavery Faherty Patterson, do hereby certify that on this 4th day of November, 2013, I served a true and correct copy of the foregoing Statement of Material Facts, via U.S. First Class mail, postage prepaid, addressed as follows:

David F. Kelly Bey
#LC0290
SPECIAL MAIL
OPEN IN FRONT OF INMATE
P.O. Box A
Bellefonte, PA  16823

s/ Amyra W. Wagner
Amyra W. Wagner