IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID F. KELLY BEY, | : | No. 3:13-CV-1942 |
| Plaintiff | : | (Judge: A. Richard Caputo) |
| | : | |
| v. | : | (M.J.: Susan E. Schwab) |
| | : | |
| DANIEL S. KEEN, MICHELLE WELLER, | : | |
| JESSICA STERNER-LENSBOWER, | : | JURY TRIAL DEMANDED |
| AND ISAAC BURKHOLDER, | : | |
| Defendants | : | (Electronically Filed) |

**DEFENDANTS' BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Frank J. Lavery, Jr., Esquire
Attorney I.D. No. 42370
Jessica S. Hosenpud, Esquire
Attorney I.D. No. 307656
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA  17108-1245
Phone: (717) 233-6633
Facsimile: (717) 233-7003
flavery@laverylaw.com
jhosenpud@laverylaw.com
Attorneys for Defendants

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

I.     Statement of Facts........................................................................1

II.    Procedural History .......................................................................1

III.   Questions Presented.....................................................................2

IV.    Standard of Review.......................................................................2

V.     Argument   ....................................................................................6

       A.     Plaintiff has Failed to Allege Personal Involvement by Defendant
              Sterner-Lensbower  ...............................................................6

       B.     Plaintiff's RLUIPA Claims Must be Dismissed as a Matter of Law....8

       C.     Plaintiff's Claims for Declaratory or Injunctive Relief under Section
              1983 Must be Dismissed ......................................................10

       D.     Plaintiff's Section 1983 Claims for Damages due to Failure to Provide
              a Halāl Food and Meat Diet to Muslim Inmates must be Dismissed......
              ...............................................................................................11

              1.     Plaintiff Failed to Exhaust Administrative Remedies  .............11

              2.     Defendants have not Violated the Free Exercise Clause of the
                     First Amendment....................................................................13

              3.     Defendants have not Violated the Equal Protection Clause of
                     the Fourteenth Amendment.......................................................19

              4.     Defendants are Entitled to Qualified Immunity.........................20

E.  Section 1983 Claims for Failure to Provide Sunni Muslim Imam to Provide Islamic Religious Services ......................................................22

  1.  Defendants have not Violated the Free Exercise Clause of the First Amendment ........................................................................22

  2.  Defendants have not Violated the Establishment Clause of the First Amendment ........................................................................26

  3.  Defendants are Entitled to Qualified Immunity ........................30

VI.  Conclusion ...................................................................................................31

Certification of Counsel ...........................................................................................33

Certificate of Service ...............................................................................................34

# TABLE OF AUTHORITIES

**Cases**

Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993)....................................................9

Allen v. Toombs, 827 F.2d 563 (9th Cir. 1987) ..................................................... 23

Anderson v. Creighton, 483 U.S. 635,

    97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)..........................................................21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505,

    91 L. Ed. 2d 202 (1986) ...................................................................................4

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937,

    173 L. Ed. 2d 868 (2009) ........................................................................ 2, 3, 4

Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459

    U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)..............................................4

Banks v. Beard, No. 3:CV-10-1480, 2013 U.S. Dist. LEXIS 140629

    (M.D. Pa. September 30, 2013) .......................................................................8, 9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955,

    167 L. Ed. 2d 929 (2007) ..................................................................................3

Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012) .....................................................3, 4

Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690 (3d Cir. 1996)........................10

Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819,

   149 L. Ed. 2d 958 (2001) ...................................................................11

Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153 (3d Cir. 2008).........27

Burns v. Pa DOC, 642 F.3d 163 (3d Cir. 2011) ......................................................30

Celotex Corp. v. Catrett, 477 U .S. 317, 106 S. Ct. 2548,

   91 L. Ed. 2d 265 (1986) ......................................................................5

Chinchello v. Fenton, 805 F.2d 126 (3d Cir. 1986)...................................................6

Chippollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir. 1987), *cert. dismissed*,

   483 U.S. 1052 (1987)............................................................................5

County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 109 S. Ct.

   3086, 106 L. Ed. 2d 472 (1989)...........................................................27

Cruz v. Beto, 405 U.S. 319, 92 S. Ct. 1079,

   31 L. Ed. 2d 263 (1972) .............................................................. 13, 22

Cutter v. Wilkinson, 544 U.S. 709, 125 S. Ct. 2113,

   161 L. Ed. 2d 1020 (2005)..................................................................28

D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364

   (3d Cir. 1992)......................................................................................21

DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000) ..........................................................19

Fortes v. Harding, 19 F. Supp. 2d 323 (M.D. Pa. 1998)..........................................10

Garraway v. Lappin, No. 4:CV-10-1697, 2012 U.S. Dist. LEXIS 38712

(M.D. Pa. March 21, 2012) ........................................................ 5, 7,  23

Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970) .................................... 22, 23, 31

Gould v. Beard, No. 07-0055, 2010 U.S. Dist. LEXIS 18883, 2010 WL 845566

(W.D. Pa. January 16, 2010)..............................................................26

Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284,

157 L. Ed. 2d 1068 (2004) ................................................................31

Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727,

73 L. Ed. 2d 396 (1982) ...................................................................20

Harter v. G.A.F. Corp., 967 F.2d 846 (3d Cir. 1992) ..................................5

Hilfirty v. Shipman, 91 F.3d 573 (3d Cir. 1996) ......................................6

Holman v. Hogue, No. 11-1269, 2013 U.S. Dist. LEXIS 42770

(W.D. Pa. February 15, 2013)..............................................................25

Jefferson v. Wolfe, No. 04-44, 2006 U.S. Dist. LEXIS 46748, 2006 WL 1947721

(W.D. Pa. July 11, 2006) ..................................................................7

Jupiter v. Johnson, No. 3:10-CV-1968, 2011 U.S. Dist. LEXIS 110743

(M.D. Pa. September 28, 2011) ........................................................12

Kentucky v. Graham, 473 U.S. 159,

87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985).........................................6, 9

Mathis v. Manza, No. 11-450, 2012 U.S. Dist. LEXIS 17148

   (W.D. Pa. January 18, 2012) ......................................................... 28, 29

Matshushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574,

   106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)............................................5

Mayer v. Belichick, 605 F.3d 223 (3d Cir. 2010).......................................................4

McLaughlin v. Watson, 271 F.3d 566 (3d Cir. 2001) .............................................21

Mestre v. Wagner, No. 10-7141, 2012 U.S. Dist. LEXIS 12093

   (E.D. Pa. February 1, 2012) ................................................................13

Modrovich v. Allegheny County, 385 F.3d 397 (3d Cir. 2004) ..............................27

Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct.

   2018, 56 L. Ed. 2d 611 (1978)..............................................................6

Morris-El v. Menei, Civil No. 00-200J, 2006 U.S. Dist. LEXIS 32095,

   2006 WL 1455592 (W.D. Pa. May 22, 2006) ....................................26

Norwood v. Johnson, 457 Fed. Appx. 74 (3d Cir. 2012) ........................................11

O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400,

   96 L. Ed. 2d 282 (1987) .....................................................................13

Overton v. Bazzetta, 539 U.S. 126, 123 S. Ct. 2162,

   156 L. Ed. 2d 162 (2003) ............................................................. 15, 17

Palmer v. Rustin, No. 10-0042, 2011 U.S. Dist. LEXIS 65678, 2011 WL 2489820

   (W.D. Pa. June 21, 2011) ...................................................................25

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) ...................................3

Pogue v. Woodford, No. CIV S-05-1873, 2009 U.S. Dist. LEXIS 75943

   (E.D. Cal. August 25, 2009) ................................................................................23

Pressley v. Beard, 266 Fed. Appx. 216 (3d Cir. 2008)...........................................7

Pruden v. Schuylkill Cnty Prison Med. Staff, No. 3:CV-07-006, 2007 U.S. Dist.

   LEXIS 12353, 2007 WL 465522 (M.D. Pa. Feb. 6, 2007) ................................10

Rendelman v. Rouse, 569 F.3d 182 (4th Cir. 2009). ...............................................8

Riley v. DeCarlo, No. 11-537, 2012 U.S. Dist. LEXIS 137279

   (W.D. Pa. September 25, 2012) ............................................................................7

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988)...............................................6

Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)..... 21, 30

Scott v. Beard, 252 Fed. Appx. 491, 2007 WL 3194039 (3d Cir. 2007) ................9

Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012)............................................... 14, 15

Smith v. Kyler, 295 F. App'x 479 (3d Cir. 2008) .................................................25

Sossamon v. Texas, 560 F.3d 316 (5th Cir. 2009), *aff'd*, 131 S. Ct. 1651,

   179 L. Ed. 2d 700 (2011) .....................................................................................9

Sturm v. Clark, 835 F.2d 1009 (3d Cir. 1987)........................................................2

Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003) ..................................................10

Tanafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144 (3d Cir. 2002).............27

Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254,

   96 L. Ed. 2d 64 (1987) ..................................................................... 14, 17, 18, 19

Washington v. Klem , 497 F.3d 272 (3d Cir. 2007) ......................................... 13, 16

Watkins v. Horn, No. CIV.A. 96-4129, 1997 U.S. Dist. LEXIS 13844, 1997 WL

   566080 (E.D. Pa. Sept. 5, 1997) ............................................................................7

Williams v. Morton, 343 F.3d 212 (3d Cir. 2003)............................................ 18, 22

Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378,

   165 L. Ed. 2d 368 (2006) ....................................................................................11

Young v. Beard, 284 Fed. Appx. 958 (3d Cir. 2008) .............................................29


**Acts, Rules, Statutes**

42 U.S.C. § 1983 ...................................................................................................1, 5

42 U.S.C. § 1997e(a)......................................................................................... 11, 13

42 U.S.C. § 2000cc ...................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 3

Fed. R. Civ. P. 56(a).................................................................................................4

## I.   Facts

Defendants incorporate herein by reference their Statement of Material Facts.

## II.   Procedural History

Plaintiff, David F. Kelly-Bey, initiated this action with the filing of a *pro se* civil rights Complaint on July 17, 2013.  On September 26, 2013, Defendants waived service of the Summons and the Complaint.  The Complaint was brought pursuant to 42 U.S.C. § 1983 for an alleged violation of Plaintiff's constitutional rights.   Plaintiff also makes claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*  Specifically, Plaintiff alleges Defendants violated his rights under the Free Exercise Clause of the First Amendment by reason of the failure of the Franklin County Jail (FCJ) to provide a halāl food and meat diet to Muslim inmates.  Plaintiff also alleges the FCJ offers dietary accommodations to other religious groups more swiftly than to Muslim inmates when a religious diet is requested, violating the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff further alleges the failure of Defendants to provide a full-time Sunni Muslim Chaplain violates the Establishment Clause and Free Exercise Clause of the First Amendment.  Plaintiff repeats his claims regarding the provision of a halāl food and meat diet, and lack of full-time services of an Imam, under the

RLUIPA.   The Motion to Dismiss and/or for Summary Judgment filed on November 4, 2013, submitted in response to the Complaint, requests dismissal with prejudice and/or entry of judgment in favor of Defendants given the clear inability of the Plaintiff to make any viable claim against any Defendant.

## III.   Questions Presented

A.   **Has the Plaintiff Failed to Allege Sufficient Personal Involvement by Defendant Sterner-Lensbower Necessary for Liability Under Section 1983?**

B.   **Must Plaintiff's RLUIPA Claims be Dismissed as a Matter of Law?**

C.   **Must Plaintiff's Claims for Declaratory or Injunctive Relief under Section 1983 Be Dismissed?**

D.   **Should Plaintiff's Section 1983 Claims for Damages Based Upon the Lack of a Halāl Food and Meat Diet be Dismissed and/or Judgment Entered in Favor of Defendants?**

E.   **Has Plaintiff Failed to Make Any Viable Section 1983 Claims Related to the Lack of a Sunni Muslim Imam at the FCJ?**

## IV.   Standard of Review

### A.   Motion to Dismiss

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the Complaint.   See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).   To survive a Motion to Dismiss, the Complaint must contain

"sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   Indeed, the Federal Rules of Civil Procedure mandate dismissal of Complaints which, as a matter of law, fail to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  A plaintiff must "nudge[] their claim across the line from conceivable to plausible" or "their complaint must be dismissed." Twombly, 550 U.S. at 570.

When ruling upon a Rule 12(b)(6) Motion to Dismiss, the Court must accept the factual allegations contained in the Complaint, and all reasonable inferences that can be drawn therefrom, as true.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  However, the Court may disregard "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." Iqbal, 556 U.S. at 678-79.  A plaintiff must provide the grounds for his entitlement to relief as a matter of law, or the Complaint must be dismissed. See Twombly, 550 U.S. at 570.   In Bistrian, the Third Circuit described the standard as follows:

> The touchstone of the pleading standard is plausibility. The Court in *Iqbal* explained that [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

3

> draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (*quoting* Iqbal, 556 U.S. at 678).

In ruling on a Motion to Dismiss, the Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

### B.    Motion for Summary Judgment

Summary Judgment is proper where there are no genuine issues of dispute as to any material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). Indeed,

"only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matshushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1386, 89 L. Ed. 2d 538 (1986).  Rather, a party must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U .S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion.  See Garraway v. Lappin, No. 4:CV-10-1697, 2012 U.S. Dist. LEXIS 38712, *7-8 (M.D. Pa. March 21, 2012).

If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial. See Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987), *cert. dismissed*, 483 U.S. 1052 (1987).  Motions for Summary Judgment that are presented to the court as motions in the alternative constitute sufficient notice to a

non-moving party that the court may convert a Motion to Dismiss into a Motion for Summary Judgment.  See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).

## V. Argument

### A. Plaintiff Has Failed to Allege Personal Involvement by Defendant Sterner-Lensbower

"Individual" capacity suits under 42 U.S.C. § 1983 seek to impose personal liability upon a government official for actions taken under color of state law. Kentucky v. Graham, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). To establish personal liability against a defendant in a Section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Accordingly, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  In cases of a supervisory or reviewing defendant, personal involvement may be shown by allegations of "personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207.

Plaintiff has not sufficiently alleged the personal involvement of Sterner-Lensbower.  Indeed, the sole allegations against Sterner-Lensbower are that she denied his grievances relating to the provision of a halāl food and meat diet.  Again and again, District Courts in this Circuit have held that "the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement."  See Riley v. DeCarlo, 2012 U.S. Dist. LEXIS 137279, *10-11 (D.N.J. 2012) (citing Jefferson v. Wolfe, No. 04-44, 2006 U.S. Dist. LEXIS 46748, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006); Watkins v. Horn, No. CIV.A. 96-4129, 1997 U.S. Dist. LEXIS 13844, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997); Garraway v. Lappin, 2012 U.S. Dist. LEXIS 38712 at 67-69; Pressley v. Beard, 266 Fed. Appx. 216, 218 (3d Cir. 2008)).

In Pressley, the Third Circuit found the District Court properly dismissed defendants who were sued solely "based on their failure to take corrective action when grievances or investigations were referred to them."  Pressley, 266 Fed. Appx. at 218.  Here, like in Riley and Pressley, the sole allegation relating to the involvement of Sterner-Lensbower is that she denied Plaintiff's grievances, which were then referred on appeal up the FCJ chain of supervision.  Such is simply insufficient to allow liability under Section 1983.

**B.      Plaintiff's RLUIPA Claims Must be Dismissed as a Matter of Law**

Plaintiff makes claims under RLUIPA for monetary damages against Defendants in their individual and official capacities, as well as claims for injunctive and declaratory relief.   Any claims for money damages against Defendants in their individual capacities under the RLUIPA must fail as a matter of law, given the Third Circuit's determination in <u>Sharp v. Johnson</u>, 669 F.3d 144 (3d Cir. 2012).  In <u>Sharp</u>, the Court concluded, in a matter of first impression, that the RLUIPA does not permit actions against State officials in their individual capacities.  <u>See</u> <u>id.</u> at 153.  Indeed, because the statute was enacted under the spending powers of Congress pursuant to Article I of the Constitution, RLUIPA subjects State recipients of federal funding to liability in private causes of action as a condition of receipt.  <u>See</u> <u>id.</u> at 154.  Such power cannot be used, however, to subject an individual state employee to liability in a private cause of action, as they are not parties to the contract created between the State and the Federal government. <u>See</u> <u>id.</u>  at 154-55.  <u>See also, e.g.</u>, <u>Rendelman v. Rouse</u>, 569 F.3d 182 (4th Cir. 2009).

Similarly, claims against the Defendants for money damages in their official capacities are not cognizable under RLUIPA.  <u>See, e.g.</u>, <u>Banks v. Beard</u>, No. 3:CV-10-1480, 2013 U.S. Dist. LEXIS 140629, at *21-22 (M.D. Pa. September 30, 2013).  As the District Court pointed out in <u>Banks</u>:

> The Eleventh Amendment bars money damages sought against a state official acting in his or her official capacity absent a valid abrogation by Congress or consent of the State. Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under RLUIPA, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity.

Id. at *22 (*citing* Graham, 473 U.S. at 169 ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); Scott v. Beard, 252 Fed. Appx. 491, 2007 WL 3194039, at *1 (3d Cir. 2007) (Finding that the RLUIPA claim for money damages against a Pennsylvania state official in his official capacity is barred by the Eleventh Amendment because it is essentially a claim against the State itself.). See also Sossamon v. Texas, 560 F.3d 316 (5th Cir. 2009), *aff'd*, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011) (addressing official capacity claims and holding that Section 3 of RLUIPA does not allow an individual to sue a state or a state official in his official capacity for monetary damages).

Finally, as to any injunctive claims, it is well settled that an inmate's transfer moots any equitable and declaratory claims. See, e.g., Banks, 2013 U.S. Dist. LEXIS 140629, at *21-22 (*citing* Abdul-Akbar v. Watson, 4 F.3d 195, 197 (3d Cir. 1993)). Thus, Plaintiff has asserted no cognizable claims under the RLUIPA, and any claims under the statute must be dismissed with prejudice.

### C.    Plaintiff's Claims for Declaratory or Injunctive Relief under Section 1983 Must Be Dismissed

It is well settled that "[a]n inmate's transfer from the facility complained of generally moots . . .  equitable and declaratory claims." <u>Sutton v. Rasheed</u>, 323 F.3d 236, 248 (3d Cir. 2003).   <u>See also</u> <u>Pruden v. Schuylkill Cnty Prison Med. Staff</u>, No. 3:CV-07-006, 2007 U.S. Dist. LEXIS 12353, 2007 WL 465522 *1 (M.D. Pa. Feb. 6, 2007) (A. Richard Caputo, J.).   The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 698-99 (3d Cir. 1996).

Plaintiff has been transferred from the FCJ, and even if his claims had merit, there is no evidence of any possibility he will be disadvantaged "in the same fundamental way" in the future.   <u>See</u> <u>Sutton</u>, 323 F.3d at 248.   Where an inmate seeks injunctive relief against his jailers, but is no longer housed at the institution where the claims arose, the request for an injunction is "academic," and therefore subject to dismissal for mootness.   <u>Fortes v. Harding</u>, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) (Vanaskie, J.).   Thus, Plaintiff's transfer from the FCJ renders moot and subject to dismissal his injunctive claims.

**D.    Plaintiff's Section 1983 Claims for Damages Due to Failure to Provide a Halāl Food and Meat Diet to Muslim Inmates Must be Dismissed and/or Judgment Entered in Favor of Defendants**

**1.    Plaintiff Failed to Exhaust Administrative Remedies**

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust administrative remedies prior to bring suit under Section 1983.   See Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).   Indeed, an agency must be allowed the opportunity to correct its own errors prior to being hauled into court.   See Woodford v. Ngo, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).   In Woodford, the Supreme Court stated:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).

Id.  The Court in Woodford made clear that proper exhaustion means using all steps held out by the agency, including "resubmitting a form to clarify for the agency the exact nature of one's claim."  Norwood v. Johnson, 457 Fed. Appx. 74, 77 (3d Cir. 2012) (citing Woodford, 548 U.S. 81 (2006)).

Here, upon receiving Kelly-Bey's grievances and inmate requests related to the provision of a halāl diet, Weller responded by stating her reasonable belief that

the General Population Meal Plan [hereinafter "GPMP"] was compliant, and requested Kelly-Bey clarify why he believed the GPMP was harām.  (See Statement of Material Facts [hereinafter "SMF"] ¶¶ 9, 12-16, 27-28, 42-44.)  No further explanation was ever tendered by Kelly-Bey in response to her request for clarification.  (See id. at ¶ 43.)  Rather, Kelly-Bey continued to request a halāl diet while never providing any reason for his belief the diet he was receiving was not sufficient.

Kelly-Bey may have satisfied the steps outlined in the grievance process, but without doubt "failed to comply with the spirit and tenor of the exhaustion requirements, i.e. to allow prison officials an opportunity to adjudicate and to resolve claims."  Jupiter v. Johnson, No. 3:10-CV-1968, 2011 U.S. Dist. LEXIS 110743, * 19-20 (M.D. Pa. September 28, 2011).  Clearly, Defendants were not given the chance to correct Kelly-Bey's alleged error, as they were never given the specific facts supportive of his belief their actions were erroneous.  As the Court noted in Jupiter:

> The prison system's authority here would not be protected if we allowed this claim to proceed after Plaintiff ignored the administrative directives as to what needed to be filed in order to receive the requested meals. Further, efficiency is not promoted by allowing a prisoner's claim to proceed through the courts when the prisoner has refused to comply with all the procedures presented to him to resolve the issue at the initial stages.

Id.

Moreover, prison officials are not required to simply grant inmate requests without inquiry, but rather may verify the sincerity of the inmate's religious beliefs.  See  Washington, 497 F.3d at 277.  As the District Court aptly pointed out in Mestre, "[i]f prison officials were required to serve special meals upon demand without verification, the costs would be inordinate and the prison kitchen turned into a restaurant."  Mestre v. Wagner, No. 10-7141, 2012 U.S. Dist. LEXIS 12093, *17-18 (E.D. Pa. February 1, 2012).  Clearly, Weller and the other FCJ officials were entitled to inquire of Kelly-Bey as to his reasoning for believing the GPMP did not provide an Islamic diet.  Plaintiff did not ever respond or provide such reasons.    As such, pursuant to 42 U.S.C. § 1997e(a), dismissal is clearly appropriate, as Plaintiff did not sufficiently exhaust administrative remedies, failing to allow FCJ officials to resolve his claims internally.

### 2.    Defendants Have Not Violated the Free Exercise Clause of the First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I.  The Supreme Court has therefore held that prisoners must be afforded "reasonable opportunities" to exercise the religious freedom guaranteed under the Constitution.  Cruz v. Beto, 405 U.S. 319, 322 n.2, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) (citation omitted).    Nonetheless, the Supreme Court has

repeatedly recognized that "subjecting the day-to-day judgments of prison officials to a strict scrutiny analysis would impede the officials' ability to anticipate and solve security and administrative problems."  <u>Sharp v. Johnson</u>, 669 F.3d at 155 (*citing* <u>Turner v. Safley</u>, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)).  In light of such concern, "the Court found that when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  <u>Id.</u>  To determine whether a regulation infringing upon constitutional rights is reasonable, a four (4) factor test is employed, first set forth by the United States Supreme Court in <u>Turner</u>.

The Third Circuit has subsequently described the <u>Turner</u> test as follows:

> (1) [T]here must be a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest put forward to justify it . . . (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at *de minimis* cost to valid penological objectives . . .  After *Turner*, we developed a two-step analysis for determining whether a prison's regulation is reasonably related to a penological interest. First, the prison has the burden of demonstrating the First *Turner* Factor.  This burden is slight, and in certain instances, the connection may be a matter of common sense.  Second, if the prison meets its burden under the First *Turner* Factor, then we consider the Other *Turner* Factors.

Sharp v. Johnson, 669 F.3d at 155-56.  In light of this test, the Third Circuit has

interpreted the Supreme Court's decision in Overton v. Bazzetta, 539 U.S. 126, 123

S. Ct. 2162, 156 L. Ed. 2d 162 (2003), as placing the "ultimate burden of

persuasion with regard to the reasonableness of a regulation" on the inmate.  Id. at

156.   Nonetheless, the prison must "put forward the legitimate governmental

interest alleged to justify the regulation and demonstrate that the policy drafters

could rationally have seen a connection between the policy and [that interest]."  Id.

at 156 (citations omitted).

Here, FCJ officials have developed a policy of maintaining a general meal

plan which does not contain any pork or pork derivatives, to service the broadest

base of dietary preferences possible in a single plan.  (See SMF ¶¶ 20-24, 30-35.)

Given the institution's budgetary constraints, the GPMP is meant to provide for the

most people possible using a single option, so as to reduce costs, simplify meal

preparation, and improve efficiency.  (See id. at ¶¶ 32, 34.)   Thus, the Jail

undertakes to provide a halāl menu for Muslim inmates via its GPMP.  Comparing

the menu to the rules described in the DOJ Technical Manuel, it is clear that the

menu accords with Islamic dietary requirements.  (See id. at ¶¶ 21, 29.)

After receiving grievances from the Plaintiff, Defendant Weller repeatedly

expressed her reasonable belief, based upon her research and consultation with the

provider and kitchen staff, that the GPMP satisfied Plaintiff's religious needs.  (See

15

id. at ¶¶ 10, 12-16.)  Weller asked Plaintiff to explain why he believed the GPMP was not in accord with Muslim religious practice, but received no response.  (See id.) The law clearly allowed Weller to verify the basis and sincerity of the Plaintiff's request.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).

Nonetheless, pursuant to FCJ policy, even if Plaintiff did not believe the GPMP in accord with Islamic law, they could request at any time to be fed the Vegetarian/Vegan Meal Plan [hereinafter "VMP"].  (See SMF ¶¶ 25-26, 29, 42-45.)  Containing no meat whatsoever, the ingredients used in the menu include only foods which are without doubt halāl: milk, honey, non-intoxicating plants, vegetables and fruits, legumes, and grains.  (See id.) The VMP accords with all recommended daily allowances, as by the National Academy of Science, and has been certified by a Licensed Dietician-Nutritionist as being fit for adult males. (See id.)

A single all-encompassing meal plan reduces costs and increases efficiency in the food service operations of the jail.  (See id. at ¶¶ 26-35.)  Officials have chosen to substitute the VMP where a Muslim inmate is dissatisfied with the GPMP as the substance of the meals provided is basically the same as those in the GPMP, with suitable protein and nutritional substitutes for meat items.  The kitchen staff can easily accommodate a switch to the VMP without obtaining additional ingredients or costly alternative foodstuffs separately from outside the

FCJ, which would create security concerns and require the hiring of more correctional officers.  The VMP clearly provides a suitable alternative, as the staff already takes care not to allow vegetarian or vegan food to come into contact with meat items.   Only those religious dietary restrictions that cannot possibly be accommodated using such alternative ingredients from within the FCJ, are obtained from an outside source.  (See id. ¶¶ 36-37.)

Thus, the Plaintiff's practical and religious dietary needs are satisfied by the FCJ policies, which are clearly reasonable and related to legitimate governmental interests of budgetary constraints, efficiency, and security.   The first factor in Turner has clearly been met.  Moreover, the second factor is also satisfied: given the option to request the VMP, Plaintiff was clearly given alternative means to exercise his right to follow a Muslim diet.  Interestingly, despite his complaints, Plaintiff never made such a request.  (See id. ¶¶ 42-44.)

There is no free-standing constitutional right to meat, halāl or otherwise, in a correctional institution, and Defendants could locate no case in this federal circuit or any other mandating that Muslim inmates be provided specifically halāl meat. According to the Affidavit submitted by Warden Keen, the food services budget would be greatly exceeded and security of the institution compromised if the FCJ were forced to purchase halāl meat for Muslim prisoners.  (See id. at ¶¶ 38-41.) See also Overton, 539 U.S. at 133 (prison security is "perhaps the most legitimate

of penological goals").  Further kitchen staff would be needed to prepare the meals timely for each meal service.

Applying the <u>Turner</u> test in a nearly identical case, the Third Circuit granted summary judgment for prison officials, whose failure to serve halāl meat was supported by legitimate penological interests including simplified food service, prison security, and budgetary constraints.  <u>See</u> <u>Williams v. Morton</u>, 343 F.3d 212, 218 (3d Cir. 2003).  Here, too, accommodation of the request for halāl meat would place a substantial burden on prison resources.  (<u>See</u> SMF ¶¶ 39-41.)

Plaintiff has alleged[1] that provision of Kosher meals instead of the GPMP would constitute a ready alternative to accommodate his request at a *de minimis* cost.  This argument ignores that each Kosher meal costs $5.00, as opposed to the GPMP meal cost at $1.18.  (<u>See</u> <u>id.</u> at ¶¶ 33, 36.)  Kosher meals are provided to Jewish inmates due to the intricacies of Kosher law, which for example requires all utensils, pots and pans, and containers be kosher and used only for kosher foods. (<u>See</u> <u>id.</u> at ¶¶ 36-37.)

To prepare kosher meals inside the FCJ, a kosher kitchen would have to be created, a prohibitive cost that would threaten institutional stability.  At present, the FCJ provides each inmate with a dietary plan that meets their specific nutritional,

---

[1] In his grievances, though not, it must be noted, in the Complaint, Plaintiff intimates the sole accommodation should be a Kosher meal plan. (<u>See</u> SMF ¶ 12 (*citing* Ex. 9, Inmate Request Slip dated 8-29-12).)

medical, or religious needs, in the most cost effective manner available to do so. The single plan, with available vegetarian option, is integral to that process and clearly also to the proper functioning of the institution.  To allow inmates to choose how the FCJ will comply with their needs or to demand high cost diet plans that go far beyond the dictates of their medical or religious requirements would place a huge strain on the FCJ's financial resources.  Thus, the FCJ food service and religious meals policies do not violate the Free Exercise Clause of the First Amendment, as they are reasonably related to legitimate penological interests.

### 3. Defendants Have Not Violated the Equal Protection Clause of the Fourteenth Amendment

The Third Circuit has found the test in <u>Turner</u> "equally applicable" to Fourteenth Amendment Equal Protection Claims alleging discrimination between inmates of different religions.  <u>DeHart v. Horn</u>, 227 F.3d 47, 61 (3d Cir. 2000). While discrimination against inmates of different religions is impermissible, an inmate is precluded from obtaining relief "if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is reasonably related to penological interests."  <u>Id.</u> at 61.  Here, Plaintiff has alleged that the dietary needs of inmates of other religions are provided for without question, or are accommodated pending approval, while those of Muslim inmates are not.  Plaintiff provides no further detail with regard to his Fourteenth Amendment claim.

Conversely, the evidence of record demonstrates unequivocally that while any religious dietary request is being verified for approval, the requesting inmate is given the option of requesting the VMP.  (<u>See</u> SMF ¶ 26.)  Indeed, any inmate at any time may request the meatless plan, the sole accommodation offered.  (<u>See id.</u>) The accommodation is related to legitimate interests, allowing for efficient meal service by utilizing the same ingredients, which are delivered simultaneously and allow for almost all inmate meals to be prepared from within the facility.  (<u>See id.</u> at ¶¶ 31-35.)  Budgetary, efficiency, and security concerns are all addressed by the accommodation of the VMP.  The Plan provides for alternative means of exercising a religious diet, and there are no less costly alternatives which would not compromise the interests served by the single meal plan.  Clearly, the accommodation of the VMP is reasonably related to penological interests, and Defendants are entitled to judgment in their favor on Plaintiff's Equal Protection claim.

### 4.    Defendants are Entitled to Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  In determining whether a defendant is

entitled to qualified immunity, the court must ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

The Supreme Court in Anderson v. Creighton, 483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987), clarified the standard.   Under Anderson, a Constitutional right is 'clearly established' where its contours are "sufficiently clear" such that "a reasonable official would understand that what he is doing violates that right." Id. at 640.  Generally, there must be "sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).  Qualified immunity questions should be resolved at the earliest possible stage of the litigation. See Anderson, 483 U.S. at 646 n.2.  It is also important to note that "a necessary concomitant to the determination of whether the constitutional right asserted by plaintiff is 'clearly established' at the time the defendant acted, is the determination of whether the plaintiff has asserted a violation of the constitutional right at all." D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992).

As the discussion, *supra*, regarding the Free Exercise and Equal Protection Claims makes clear, Defendants did not violate the Plaintiff's constitutional rights, and are entitled to immunity from suit.   Moreover, given the Third Circuit's decision in <u>Williams</u>, there is clearly no well-established right to a halāl food and meat diet.   <u>Williams v. Morton</u>, 343 F.3d at 218.    Rather, what is clearly established is the right of prison officials to develop plans for accommodation of inmate religious diets in light of the legitimate concerns of budgetary constraints, efficiency, and security.   Defendants are entitled to qualified immunity as a matter of law as to any claims relating to the FCJ's provision of religious diets to Muslim inmates.

> **E.     Plaintiff Makes No Viable Section 1983 Claims Related to the Lack of a Sunni Muslim Imam at the FCJ**
>
> > **1.     Defendants Have Not Violated the Free Exercise Clause of the First Amendment**

The Supreme Court has made clear that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." <u>Cruz</u>, 405 U.S. at 322 n. 2.  The Third Circuit echoed this sentiment in <u>Gittlemacker</u>, stating "[t]he requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the

22

suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." Gittlemacker, 428 F.2d at 4.

In Garraway, the Court summarized precedent on the issue, stating:

> The Free Exercise Clause guarantees substantive right but does not guarantee that all religious sects will be treated alike in all respects. While prisoners must be given reasonable opportunity to exercise their faith, the Constitution does not require that a religious adviser be provided to cater to every sect/sub-sect in the penitentiary, nor does the Constitution require that prisoners be provided with a religious adviser of their choice or with the one belonging to their unique religious sect/sub-sect (or sharing their unique religious views).

Garraway, 2012 U.S. Dist. LEXIS 38712, at *33-34 (*citing, among others omitted,* Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987) (a prisoner is not entitled to have the clergyman of his choice provided for him in the prison); Pogue v. Woodford, 2009 U.S. Dist. LEXIS 75943 at *8 (E.D. Cal. 2009) (only when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from his own is there a possibility that the prisoner's free exercise rights are violated).   As in Garraway, Defendants submissions herein clearly show that when Muslim volunteers were available, they were utilized, and that there have been and continue to be ongoing efforts to locate further volunteer Imams.  (See SMF ¶¶ 46-63.)

Budgetary constraints allow only one (1) full-time Chaplain at the FCJ.  (See id. at ¶¶ 46-49.)  While Reverend Burkholder is an adherent of the Christian faith, rather than a follower of Islam, such makes clear sense given the numbers of Christian and Muslim inmates at the FCJ.  (See id. at ¶¶ 52-53.)  Volunteer clergy provide services to those denominations/religions that would not view Chaplain Burkholder as a sufficient spiritual leader, such volunteers being encouraged, and indeed, sought after by jail officials.  (See id. at ¶¶ 50, 57.)  Given the lack of Imams within geographical proximity to the FCJ, however, the search has been fruitless since the last volunteer Imam ceased visits.  (See id.)

Moreover, those Imams who could be located often requested payment for their services and travel time, which could not be accommodated by the FCJ given budgetary constraints.  (See id. at ¶¶ 50, 57-58.)  Additionally, if the jail were to hire a Sunni Muslim Imam, or compensate such for services, Equal Protection considerations would require payment of a Shia Muslim Imam, a Rabbi, a Brahman, and/or a Guru upon request.  (See id. at ¶¶ 52, 57-58.)  The costs of such engagements would seriously hamper the ability of the FCJ to provide rehabilitative services to inmates, and likely result in the layoff of correctional officers, compromising security.  (See id. at ¶ 58.)

There is no evidence, and Plaintiff did not plead, that Defendants have knowledge of the existence of an Imam waiting to volunteer, but have not accepted

such offer.  To the contrary, Plaintiff has pled and undisputed evidence of record demonstrates, that FCJ officials simply have not been able to locate such an individual despite ongoing efforts.  A similar claim was considered and rejected by the Western District Court in <u>Holman</u>.  <u>Holman v. Hogue</u>, No. 11-1269, 2013 U.S. Dist. LEXIS 42770 (W.D. Pa. February 15, 2013).   The Court noted that the Plaintiff did not complain he was not allowed to associate with other Muslims, given religious texts or items associated with his religion, or allowed time for group prayer.  <u>See</u> <u>id.</u> at *12.  The Court stated:

> It is not the responsibility of the prison to provide Plaintiff with access to every religious accommodation he requests. Nor is it the responsibility of a county jail with limited resources to provide services for every faith of every prisoner in its facility. Budgetary constraints constitute a valid penological interest and restricting religious-based services has been held to be rationally related to that interest.

<u>Id.</u>

In <u>Smith</u>, the Third Circuit likewise held no violation of the Free Exercise Clause occurred by reason of a DOC policy "to provide Chaplains for only the largest major faith groups and to prohibit group worship in the absence of an approved, volunteer Faith Group Leader" citing legitimate interests including managing limited financial resources and maintaining prison security.   <u>Smith v. Kyler</u>, 295 F. App'x 479, 481 (3d Cir. 2008).  <u>See</u> <u>also</u> <u>Palmer v. Rustin</u>, Civil No. 10-0042, 2011 U.S. Dist. LEXIS 65678, 2011 WL 2489820, at *9 (W.D. Pa. June

21, 2011) (dismissing a claim based on denial of right to attend Muslim services); Gould v. Beard, Civil No. 07-0055, 2010 U.S. Dist. LEXIS 18883, 2010 WL 845566, at *6 (W.D. Pa. Jan. 16, 2010) (holding that a prisoner did not have a right to communal Nation of Islam services); Morris—El v. Menei, Civil No. 00-200J, 2006 U.S. Dist. LEXIS 32095, 2006 WL 1455592, at *2-6 (W.D. Pa. May 22, 2006) (denying claim that failure to provide Moorish Science services violated the inmate's right to Free Exercise).

Here, FCJ policy does not prohibit inmate-led group worship. (See SMF ¶ 59.)  Plaintiff and the other Muslim inmates inside the FCJ are permitted to conduct self-led Jumu'ah services each Friday, and to study together for Taleem each Thursday.  (See id. at ¶¶ 59-61.)  They are provided religious materials via the Chaplain, who supervises the services for security purposes, a legitimate penological interest.  Inmates are additionally permitted to engage in daily individual prayer.  (See id. at ¶ 62.) Clearly, based on the undisputed evidence of record, and the dictates of the law, Plaintiff's claims under the Free Exercise Clause regarding lack of a Sunni Imam should be dismissed and/or judgment entered in favor of Defendants.

### 2.  Defendants Have Not Violated the Establishment Clause of the First Amendment

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.

The clause has been interpreted as preventing the government from either promoting any religious doctrine or organization, or affiliating itself with one. County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 590, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989). A violation occurs if "the challenged governmental practice has the purpose or effect of 'endorsing' religion." Id. at 592. Various tests have been articulated for analysis of Establishment Clause claims. The traditional test, dubbed the Lemon test, provides that a challenged action is unconstitutional where it: 1) lacks a secular purpose, 2) has a primary effect of either advancing or inhibiting religion, or 3) fosters excessive entanglement of government with religion.  See Modrovich v. Allegheny County, 385 F.3d 397, 401 (3d Cir. 2004).

The Supreme Court has also developed an "endorsement test," applicable in cases of state participation in a religious activity.  See Tanafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 175 (3d Cir. 2002).  Under such test, the Establishment Clause is violated where "a reasonable observer familiar with the history and context of the display would perceive the display as a government endorsement of religion." Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 175 (3d Cir. 2008).  Here, the FCJ's failure to employ a full-time Sunni Muslim cleric does not satisfy either test.

The Supreme Court has long recognized that the government may "accommodate religious practices" without violating the Establishment Clause. <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 713--14, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005).  Indeed, in the prison context, this principle is especially important, given the correspondent dictates of the Free Exercise Clause.  The Court in <u>Mathis v. Manza</u> aptly explained:

> Prisons deal with a unique area of tension between the establishment clause and the free exercise clause of the First Amendment.  Government cannot require persons to worship in particular ways and cannot aid, endorse, or promote particular religions. But where the government has total control over people's lives, as in prisons, a niche has necessarily been carved into the establishment clause to require the government to afford opportunities for worship . . . [A]lthough provisions in penal institutions might contravene the Establishment Clause, they would be sustained as necessary to secure the right to worship guaranteed by the Free Exercise Clause. Thus, in the prison context, the establishment clause has been interpreted in the light of the affirmative demands of the free exercise clause.

<u>Mathis v. Manza</u> , No. 11-450, 2012 U.S. Dist. LEXIS 17148, * 14-15 (W.D. Pa. January 18, 2012) (citations omitted).

Here, the employment of a single prison Chaplain reflective of the majority of the inmate population has a valid secular purpose, as the Free Exercise Clause requires the government make reasonable religious accommodations for prisoners.

See, e.g., Young v. Beard, 284 Fed. Appx. 958, 963 (3d Cir. 2008).  The single Chaplain does not either inhibit or advance religion, nor does the failure to provide a Sunni Muslim Imam on a full-time basis.  Inmates are not required to participate in any religious programs, nor does the Chaplain provide any unsolicited or unwanted religious guidance.  The policy of the FCJ makes clear that under no circumstances will any inmate be forced to receive any religious services, and the institution does not endorse or encourage one type of service over another.  (See SMF ¶ 63.)  The services of both the Chaplain and the Volunteer Clerics merely give inmates the option, but do not oblige them, to follow their faith.  Cf. Mathis, 2012 U.S. Dist. LEXIS 17148, at *16.

Nor does the provision of a single Chaplain foster any excessive entanglement.  Indeed, Prison authorities do not direct the Chaplain in his religious services, nor does the prison endorse the services conducted by the Chaplain in any manner.  Rather, it merely accommodates such services within the institution as required by the Free Exercise Clause, in light of budgetary constraints which simply do not allow the facility to employ a cleric for each religious denomination represented by the inmate population.  (See SMF at ¶¶ 52-53, 57-58.)  Volunteers of various persuasions are sought after and utilized to provide alternative religious services, in order to accommodate the religious needs of prisoners.   Such volunteers are also not directed in any manner by the FCJ, but rather merely

allowed to visit the institution to provide religious services to those who so request. There is no excessive entanglement, the policies merely permitting inmate to freely exercise their particular religious beliefs.

Finally, no reasonable observer could view the failure to provide a Sunni-Muslim cleric as an endorsement of religion.  Rather, the Chaplain's religious affiliation mirrors that of the majority of inmates in the FCJ, and can only be seen as a reasonable reflection of budgetary constraints.  Indeed, provision of a Sunni-Muslim cleric, from the perspective of, for example, a Buddhist inmate, may well be viewed as an endorsement given the few Sunni Muslims incarcerated in the FCJ.  Clearly, the FCJ policies regarding provision of religious services, and the failure to provide a Sunni Muslim Cleric, do not violate the Establishment Clause.

### 3.    Defendants are Entitled to Qualified Immunity

As discussed in the context of Plaintiff's claims regarding the halāl meals, *supra*, qualified immunity protects government defendants from liability absent "fair warning" that their actions violate a person's rights.  See Burns v. Pa DOC, 642 F.3d 163, 176 (3d Cir. 2011).  The Court must determine "whether a right is clearly established" by asking "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  In order for an official "to have 'fair warning' [...] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." <u>Burns</u>, 642 F.3d at 176.   Qualified immunity applies regardless of whether an official has made "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Groh v. Ramirez</u>, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

Legitimate budgetary constraints impel the FCJ to employ a single Chaplain, whose religious denomination is a reflection of the majority of the inmates housed in the institution.  (<u>See</u> SMF ¶¶ 46-53, 58.)  The Court in <u>Gittlemacker</u> made clear that a prison is not required to employ a cleric for inmates of every religious denomination housed therein.   The volunteer policy is clearly reasonable and supported by the case law.  Despite ongoing efforts, a volunteer Imam has yet to be located by FCJ officials.   There is no legal precedent for the proposition that failure to locate a volunteer imam, despite ongoing efforts, is a constitutional violation. Thus, Defendants are clearly entitled to qualified immunity, and the Plaintiff's claims must be dismissed and/or judgment entered in favor of Defendants.

## VI.   <u>Conclusion</u>

For the good and sound reasons set forth herein, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss and/or for

Summary Judgment, and dismiss the Plaintiff's claims, and/or enter judgment in their favor.

Respectfully submitted,

LAVERY FAHERTY PATTERSON

Date:  November 18 , 2013          By:    /s/ Frank J. Lavery, Jr.
                                   Frank J. Lavery, Jr., Esquire
                                   Attorney I.D. No. 42370
                                   Jessica S. Hosenpud, Esquire
                                   Attorney I.D. No. 307656
                                   225 Market Street, Suite 304
                                   P. O. Box 1245
                                   Harrisburg, PA  17108-1245
                                   Phone: (717) 233-6633
                                   Facsimile: (717) 233-7003
                                   flavery@laverylaw.com
                                   jhosenpud@laverylaw.com
                                   Attorneys for Defendants

<u>CERTIFICATION OF COUNSEL</u>

The undersigned counsel hereby certifies that the foregoing Brief complies

with the Order of Court issued November 8, 2013, in response to Defendants'

Motion to File Brief in Excess of 5000 Words, permitting the foregoing brief to

contain more than 5,000 words but less than 7,500 words.  The brief contains **7,478**

words.  Counsel relied upon the word count feature of the word processing system

used to prepare the brief in obtaining the foregoing number.

Respectfully submitted,

LAVERY FAHERTY PATTERSON

Date: November 18, 2013        By:   */s/ Frank J. Lavery, Jr.*
                                     Frank J. Lavery, Jr., Esquire
                                     Attorney I.D. No. 42370
                                     Jessica S. Hosenpud, Esquire
                                     Attorney I.D. No. 307656
                                     225 Market Street, Suite 304
                                     P. O. Box 1245
                                     Harrisburg, PA  17108-1245
                                     Phone: (717) 233-6633
                                     Facsimile: (717) 233-7003
                                     flavery@laverylaw.com
                                     jhosenpud@laverylaw.com
                                     Attorneys for Defendants

33

## <u>CERTIFICATE OF SERVICE</u>

I, Amyra W. Wagner, Esquire, with the law firm of Lavery Faherty Patterson, do hereby certify that on this 18th day of November, 2013, I served a true and correct copy of the foregoing Brief in Support of Motion to Dismiss and/or Motion for Summary Judgment, via U.S. First Class mail, postage prepaid, addressed as follows:

David F. Kelly Bey
#LC0290
SPECIAL MAIL
OPEN IN FRONT OF INMATE
P.O. Box A
Bellefonte, PA  16823

s/ Amyra W. Wagner
Amyra W. Wagner